LEE H. STELLMACHER, *et al.*,

           **Plaintiffs,**

v.                                          Case No. 22-CV-453

RANDALL HEPP, *et al.*,

           **Defendants.**

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Lee H. Stellmacher and Jeffrey L. Larson, who are incarcerated at Fox Lake Correctional Institution (FLCI) and representing themselves, bring this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) The plaintiffs were allowed to proceed on an Eighth Amendment claim against the defendants, Warden Randall Hepp, Warden Michael Meisner, and Candace Whitman, for alleged deliberate indifference to the risk of substantial harm posed by unsafe drinking water. The defendants filed a motion for summary judgment for failure to exhaust administrative remedies. (ECF No. 16.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 7,8, 12.) The motion is fully briefed and ready for a decision.

### PRELIMINARY MATTERS

The plaintiffs filed a motion requesting the court to accept their "recreated Proposed Findings of Fact." (ECF No. 35.) The court will construe this as a motion to

file a sur-reply. The plaintiffs had previously moved to file a sur-reply, which the court denied because they did not include the proposed sur-reply. (ECF No. 33.) This motion includes the materials that should have been attached to the original sur-reply.

District courts are entitled to treat *pro se* submissions leniently, *see Grady v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), and it appears that the plaintiff made a good faith effort to try to comply with Civil L.R. 7(i). Also, whether to grant a party leave to file a sur-reply brief is a question within the court's discretion. "The decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief." *Merax-Camacho v. U.S.*, 417 F. App'x 558, 559 (7th Cir. 2011) (citing *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3 626, 631 n. 2 (7th Cir. 2010)). "In some instances, allowing a filing of a surreply 'vouchsafes the aggrieved party's right to be heard and provides the court with the information necessary to make an informed decision.'" *Univ. Healthsystem Consortium v. United Health Group, Inc.*, 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014) (quoting *In re Sulfuric Acid Antitrust Litg.*, 231 F.R.D. 320, 329 (N.D. Ill. 2005)).

The plaintiffs' sur-reply contains more clearly marked proposed findings of fact and exhibits. Substantively, the contents of the sur-reply are similar to the contents of the plaintiffs' response materials. As such, the defendants' reply still applies to the contents of the sur-reply. The court will grant the plaintiffs' motion and consider the materials from the sur-reply where appropriate.

# SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'"

3

*Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*Relevant Procedure for Exhausting Administrative Remedies*

The Inmate Complaint Review System (ICRS) is the main process an inmate must use to bring a grievance to the attention of the institution. Wis. Admin Code § DOC 310.04. Before filing a formal written inmate complaint, "an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint." Wis. Admin Code § DOC 301.07(1). An inmate must file a formal

4

written inmate complaint regarding whatever issue he wishes to raise within 14 calendar days of the conduct giving rise to the complaint occurring. Wis. Admin. Code § DOC 310.07(2). The complaint must clearly identify the issue the inmate seeks to complain about. Wis. Admin. Code § DOC 310.07(5).

Once an inmate files a complaint, the institution complaint examiner (ICE) may either accept, reject, or return the complaint. Wis. Admin. Code § DOC 310.10(2). A complaint may be rejected for any of the nine reasons stated in Wis. Admin. Code § DOC 310.10(6)(a)-(i). An inmate may appeal a rejected complaint to the appropriate reviewing authority within 10 days. Wis. Admin. Code § DOC 310.10(10). A complaint may be returned within 10 days of receipt if it fails to meet filing requirements, Wis. Admin. Code § DOC 310.10(5). An inmate has 10 days to correct the deficiencies. Wis. Admin. Code § DOC 310.10(5).

Once the ICE accepts the complaint, the ICE makes a recommendation to the Reviewing Authority. Wis. Admin. Code § DOC 310.10(12). The Reviewing Authority has 15 days after receiving the recommendation to either affirm or dismiss the complaint in whole or in part. Wis. Admin. Code § DOC 310.11(1)-(2). Within 14 days after the date of the reviewing authority's decision, an inmate may appeal the reviewing authority's decision to the Corrections Complaint Examiner (CCE). Wis. Admin. Code § DOC 310.12(1). Appeals may not exceed 500 words and may not exceed two pages. Wis. Admin. Code § DOC 310.09(2)(e).

The CCE then has 45 days in which to make a recommendation to the Office of the Secretary of the DOC or to notify the inmate that more time is needed. Wis.

Admin. Code § DOC 310.12(9). The CCE "may recommend rejection of an appeal not filed in accordance with § DOC 310.09." Wis. Admin. Code. § DOC 310.12(5). The Secretary then has 45 days in which to make a decision following receipt of the CCE's recommendation. Wis. Admin. Code § DOC 310.13(1). If an inmate does not receive a decision from the Secretary within 90 days of receipt of the appeal in the CCE's office, he may consider his administrative remedies exhausted. Wis. Admin. Code § DOC 310.13(4).

*Plaintiffs' Claims*

The plaintiffs were allowed to proceed on a claim for deliberate indifference under the Eighth Amendment against the defendants "based on allegations that, despite allegedly significant health risks to Plaintiffs, [the defendants] refuse to provide Plaintiffs with bottled water and/or testing for heavy metals while repairs to the water system are underway." (ECF No. 3 at 4.).

*Plaintiffs' Attempts to Exhaust Their Administrative Remedies*

There are three relevant inmate complaints, two filed by Stellmacher and one filed by Larson. The defendants do not dispute that all three inmate complaints went through the entire grievance process. Instead, they argue that these three complaints do not adequately put the defendants on notice of the specific nature of the plaintiffs' claims.

FLCI-2021-17639

The ICE received Stellmacher's first inmate complaint, FLCI-2021-17639, on November 18, 2021. (ECF No. 20, ¶ 3.) In this inmate complaint Stellmacher stated

6

he was "provided contaminated water by FLCI for the inmates." (ECF No. 18-2 at 11.) Stellmacher noted the water was "dirty" and requested that FLCI "furnish all inmates with clean safe water to drink, cook, and bathe with that doesn't cause discomfort or serious health problems." (*Id.*) The complaint stated that the "dirty water discharge" that occurred on October 7, 2021, was one incident of "many" and that consuming the water affects "everyone's health." (*Id.*) Additionally, he stated that "just because the water isn't as dirty every day as the event on 10/7/21 doesn't mean the effects of its daily use to our health is of any less damage." (*Id.*)

FLCI-2022-3118

The ICE received Stellmacher's second inmate complaint, FLCI-2022-3118, on February 18, 2022. (ECF No. 20, ¶ 6.) In this complaint Stellmacher stated that there was another "dirty water event" and requested "<u>clean, good, drinking and washing</u>" water. (Emphasis in original) (ECF No. 18-3 at 11.) He noted that the lack of good drinking water affected him and other prisoners on his cell block, stating "we are/were dehydrated and sick from COVID" and the staff was "indifferent to our needs." (*Id.*)

FLCI-2021-17761

The ICE received Larson's inmate complaint, FLCI-2021-17761, on November 19, 2021. (ECF No. 20, ¶ 15.) In it Larson requested that FLCI "give us inmates at FLCI clean water to drink, cooking and showers [*sic*] because the water at times is dirty, smelly, and contaminated, which causes medical problems." (ECF No. 18-5 at

7

Case 2:22-cv-00453-WED   Filed 04/06/23   Page 7 of 10   Document 36

11.) Larson also noted that the water has been unsafe for several years and was the color of rust with "black stuff" in it. (*Id.*)

*Plaintiffs' Additional Assertions Regarding Exhaustion*

The plaintiffs do not dispute the substance of their inmate complaints. However, they note that, before filing their inmate complaints, they complied with Wis. Admin. Code § DOC 310.07(1), which requires that they attempt to informally resolve whatever it is they are complaining about. (ECF No. 26 at 14.) Both Stellmacher and Larson state they wrote Health Services Requests (HSR) regarding the water quality and the risks it posed. (*Id.*) They included copies of these HSRs with their response materials and within the sur-reply. (ECF No. 26-1 at 5-21; ECF No. 35-3.) The HSRs and subsequent medical records discuss the plaintiffs' concerns about various health risks and their concerns that the water is severely affecting their health. (*Id.*) They also asked for access to bottled water and for blood testing. (*Id.*)

*Analysis*

The defendants characterize the plaintiffs' claims as "medical-care" claims under the Eighth Amendment. (ECF No. 17 at 12.) However, the court's screening order framed the claims more broadly. The court stated that it violates the Eighth Amendment to expose a prisoner to an excessive risk to health or safety, and that providing unsafe drinking water does not require a showing of "the onset of symptoms." (ECF No. 3 at 4.) The plaintiffs' claims are not limited to a claim that the defendants failed to address medical issues resulting from providing unsafe drinking water.

Thus, the defendants' contention that the plaintiffs' inmate complaints did not put them on notice of the nature of their claims is inconsistent with the facts. The three inmate complaints clearly put the defendants on notice that the plaintiffs were concerned that they were exposed to an excessive risk to their health and safety by being provided unsafe drinking water.

Even if the claims were more narrowly limited to deliberate indifference to the plaintiffs' medical needs, the inmate complaints, coupled with the HSRs, demonstrate that the plaintiffs exhausted their administrative remedies. It is undisputed that, before filing an inmate complaint, a prisoner must first attempt to informally resolve whatever the problem is that he is complaining about. In this case it is undisputed that the process by which to informally resolve the problem is by filing an HSR. It is undisputed that the plaintiffs did so. And in Stellmacher's case some of those HSRs were submitted with his inmate complaint. (*See* ECF No. 18-2, 12-13.)

No reasonable factfinder could conclude that the defendants were not on notice of the nature of the plaintiffs' claims. Therefore, the defendants' motion for summary judgment on the grounds that the plaintiffs failed to exhaust their administrative remedies is denied.

The court will issue a separate amended scheduling order resetting the discovery and dispositive motion deadlines.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the plaintiff's motion to file a sur-reply (ECF No. 35) is **GRANTED**.

9

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No.16) is **DENIED**.

Dated at Milwaukee, Wisconsin this 6th day of April, 2023.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge